**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Bourne Bobby THOMAS, Defendant–
Appellant.**

No. 96–50110.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 6, 1997.

Decided Jan. 22, 1998.

Amended on Denial of Rehearing.*

---

* Judge Skopil votes to grant the petition.

Thor O. Emblem, Escondido, California, for defendant-appellant.

Mary Schneider, Assistant United States Attorney, San Diego, California, for plaintiff-appellee.

Before: SKOPIL, PREGERSON, and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

The question in this case is whether, when predisposition to commit an offense is at issue, a defendant may introduce evidence concerning his record of past acts or whether only the government is free to introduce such evidence. In entrapment cases, it is in the defendant's interest to seek to establish that his past record is that of a model citizen, while it is in the prosecution's to show that long before a government agent ever approached him, the person on trial regularly

engaged in conduct similar to that charged in the indictment.

The defendant on this appeal, Bourne Bobby Thomas, was retried on one count of conspiracy to possess methamphetamine with intent to distribute and one count of aiding and abetting possession of methamphetamine with intent to distribute. He had been convicted on both counts in his first trial, but that conviction was overturned on an earlier appeal in an unpublished memorandum disposition, on the ground that the district court erred in failing to give an instruction on the defense of entrapment. On retrial, Thomas was again convicted on both counts and was sentenced to 151 months in prison. He now appeals on the ground that the district court erred in precluding him from testifying, as part of his entrapment defense, that he had never been arrested or convicted of any offense prior to the time the government agent approached him with regard to the transaction that underlies his conviction.

## I.  Factual Background[1]

Cristobal Crosthwaite–Villa, a friend of Thomas', owned a car that was seized by United States immigration officials in mid-September 1992, as he was trying to cross the Mexico–United States border illegally. While Crosthwaite was in Tijuana trying to secure the return of his car, he ran into a childhood friend, Albert Barruetta. Unbeknownst to Crosthwaite, Barruetta, a Mexican national living in Tijuana, was a professional informer for United States DEA agents. Barruetta told Crosthwaite that for $1,000 he could get Crosthwaite's car back, and could also obtain a permit for Crosthwaite to live in the United States. Crosthwaite accepted the offer and gave Barruetta $400 as a down payment.

Crosthwaite contacted Barruetta a number of times during October 1992 to discuss Barruetta's progress in getting the car back and in obtaining the permit for Crosthwaite to live with his family in the United States. In the course of those conversations, Barruetta learned that Crosthwaite was a drug user. The two spoke generally about drugs but never talked about drug smuggling. On several occasions, Barruetta drove Crosthwaite across the border into the United States illegally.

Despite the fact that Barruetta had no knowledge that Crosthwaite had ever engaged in drug dealing, Barruetta met with DEA Agent Bruce Goldberg and told him that Crosthwaite distributed "multi-pounds" of methamphetamine on a monthly basis. Goldberg formally enlisted Barruetta as a confidential informant, and agreed to pay him a contingency fee based upon his success in setting up a sting operation. Thereafter, Barruetta requested Crosthwaite to find him a source for methamphetamine. Crosthwaite unsuccessfully looked for a source to provide the drug.

Eventually, Crosthwaite decided to contact Thomas, who at some point in the past had sold him a couple of single $20 doses of methamphetamine.[2] Thomas testified that Crosthwaite brought Barruetta to his home and introduced Barruetta as his cousin. Thereafter, the stories begin to diverge. Thomas testified that Barruetta asserted that if Thomas helped set up a drug deal, Crosthwaite would get his car back and obtain his immigration papers. Thomas contended that he told Barruetta that he could not help him. Thomas further testified that Barruetta wouldn't take no for an answer, and that Barruetta met or spoke with him several more times in order to try to convince him to take part in various methamphetamine, cocaine, and marijuana deals. He stated that, as an incentive to participate, Barruetta offered him marijuana and cocaine, all of which he rejected. Barruetta, however, testified that he never discussed Crosthwaite's immigration and car seizure problems

---

1. This statement of facts reflects only the testimony presented at the retrial.

2. Although the dissent states that Thomas admitted to being a drug seller, he only testified that on occasion he had at some point purchased small amounts of methamphetamine for his and Crosthwaite's personal use, for which Crosthwaite had reimbursed him. This is an admission far more limited in scope than would ordinarily warrant a description of a person without any criminal record as a drug seller.

with Thomas and never offered Thomas any drugs.

Whatever the facts, ultimately Thomas agreed to go along with Barruetta's plan. He testified that he did so in order to help Crosthwaite and that he made it clear that he would not speak to Barruetta or participate in any transaction unless Crosthwaite was present. A deal was arranged for Barruetta to purchase three pounds of methamphetamine in early December. The evidence is in dispute as to whether Thomas sought or expected to receive any compensation for his part in the scheme. When the transaction finally occurred, DEA agents arrested Thomas, Crosthwaite, and Jose Solorio, a courier who had delivered the drugs.

At trial, Thomas' defense was that he was entrapped by Barruetta, and that he was neither a drug dealer nor predisposed to engage in the drug transactions for which he was convicted. On appeal, he contends that the district court committed reversible error in refusing to allow him to present testimony concerning his lack of a criminal or arrest record as evidence that he was not predisposed to commit the crimes charged. We agree, and therefore reverse and remand.

## II. Discussion

█ The elements of an entrapment defense are that (1) a government agent induced the defendant to commit a crime (2) he was not predisposed to commit. *United States v. Barry*, 814 F.2d 1400, 1401 (9th Cir.1987). As the Supreme Court explained in *Jacobson v. United States*, 503 U.S. 540, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992), "[w]here the Government has induced an individual to break the law and the defense of entrapment is at issue, . . . the prosecution must prove beyond reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by Government agents." *Id.* at 548–49, 112 S.Ct. at 1540, *quoted in United States v.*

*Skarie*, 971 F.2d 317, 320 (9th Cir.1992). On appeal, Thomas argues that the district court abused its discretion in excluding evidence of his lack of a criminal or arrest record, and particularly his own testimony to that effect, although that evidence was probative as to the question whether he was predisposed to engage in large-scale drug deals like the one that underlies his conviction.

█ Five factors are relevant in determining whether a defendant was predisposed to commit a crime:

(1) the character or reputation of the defendant; (2) whether the government made the initial suggestion of criminal activity; (3) whether the defendant engaged in the activity for profit; (4) whether the defendant showed any reluctance; and (5) the nature of the government's inducement.

*Barry*, 814 F.2d at 1402 (quoting *United States v. So*, 755 F.2d 1350, 1354 (9th Cir. 1985)); *accord Skarie*, 971 F.2d at 320. Although the first prong of the test for predisposition requires consideration of a defendant's character, we have not yet had occasion to decide the question whether evidence of a defendant's prior good acts or conduct is admissible to demonstrate lack of predisposition.

In *Barry*, we noted that the Supreme Court vacated our decision in *United States v. Donoho*, 575 F.2d 718, *vacated*, 439 U.S. 811, 99 S.Ct. 68, 58 L.Ed.2d 102, *on remand*, 586 F.2d 682 (9th Cir.1978), for further consideration in light of the Solicitor General's brief in that case, which argued that character evidence, both favorable and unfavorable, is admissible under Federal Rule of Evidence 405(b) because lack of predisposition, which encompasses character, is an "essential element" of the defense of entrapment,[3] and that evidence of prior acts is also admissible under Rule 404(b), if relevant and not unduly prejudical, because it goes to the intent or state of mind of the defendant.[4] *See* 814

---

3. Federal Rule of Evidence 405(b) provides:

   Specific instances of conduct. In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.

4. Federal Rule of Evidence 404(b) provides:

   Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other pur-

F.2d at 1403–04 n. 6. We went on to explain that:

> This circuit has held that proof of specific acts of prior illegal conduct offered under Rule 404(b) may be relevant to the issue of a defendant's predisposition to commit a crime. We have not, however, squarely decided whether Rule 404(b) also applies to proof of prior good acts offered by a defendant in support of the entrapment defense....

*Id.* at 1404 n. 6 (citations omitted). We then concluded that it was not necessary to decide whether such evidence was admissible under either Rule 404(b) or Rule 405(b) because the evidence the appellant had offered—two twelve-year-old letters of commendation, an FBI rap sheet, and the testimony of an FBI agent as to the contents of the rap sheet—did not satisfy the normal hearsay and relevance rules.[5] We have not since *Barry* had occasion to consider the questions we expressly left open in that case regarding the admissibility of evidence of prior good acts.

■ This case squarely presents those questions. As in *Barry*, Thomas attempted to offer evidence that he had no prior criminal history.[6] Unlike in *Barry*, however, the evidence was neither hearsay nor outdated: Thomas himself was prepared to testify that he had no prior arrests or criminal record of any kind. For the reasons the Solicitor General advanced in *Donoho*, we conclude that evidence of prior good acts is admissible under Rule 404(b) to prove the defendant's intent or state of mind as long as it " 'bears meaningfully on the defendant's lack of a criminal disposition at the time of the government's inducement.' " *See Barry*, 814 F.2d at 1403 n. 6 (quoting Brief for the United States at 7–9, *Donoho v. United States*, 439 U.S. 811, 99 S.Ct. 68, 58 L.Ed.2d 102 (1978)).

In the instant case, the government had the burden of proving beyond a reasonable doubt that Thomas was predisposed to engage in a drug transaction involving three pounds of methamphetamine, at a purchase price of $25,000. *See, e.g., Jacobson v. United States*, 503 U.S. 540, 548–49, 112 S.Ct. 1535, 1540–41, 118 L.Ed.2d 174 (1992); *Barry*, 814 F.2d at 1402 (once trial court determines to submit entrapment defense to jury, government bears burden to prove beyond reasonable doubt that defendant committed crime as result of predisposition and not because of government inducement). As proof of predisposition, the government offered evidence that Thomas was an occasional methamphetamine *user* (as opposed to a dealer), and that at some point in the past he had sold Crosthwaite a couple of single $20 doses of methamphetamine. In response, Thomas was prepared to testify that he had no prior arrest or conviction record and certainly no record of any past criminal behavior that in any way suggested that he might be predisposed to engage in large-scale drug trafficking. Where the issue is predisposition—and specifically, predisposition to engage in a drug transaction involving multiple pounds of methamphetamine—the evidence that the defendant has no record of prior bad acts is clearly relevant; it is probative as to his intent to commit the crime. That is especially true where, as here, the government's confidential informant initiated the transaction, possibly engaged in numerous instances of illegal activity in order to facilitate it (including illegally transporting Crosthwaite across the border multiple times and unsuccessfully attempting to induce Thomas to participate by offering him drugs), determined the type and volume of drugs involved, and arranged the meeting with the "buyer."

Thomas' testimony that he had no prior arrest or criminal record would have allowed a jury to infer that he had not engaged in prior bad acts or bad conduct. While it does not necessarily follow that a person with no

---

poses, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**5.** Specifically, we held that the letters of commendation, the rap sheet, and the FBI agent's testimony were all hearsay, and that they were not probative of the defendant's state of mind when he committed the offense in question. *Id.*, 814 F.2d at 1404 & n. 7.

**6.** As the government concedes, and as is made clear in *Barry*, proof of no prior bad acts is the equivalent of proof of prior good acts.

prior criminal or arrest record has always behaved in a law-abiding manner, evidence of the absence of a record is certainly relevant because it would tend to make it more probable that the person had not previously engaged in criminal conduct. Accordingly, the district court should have allowed Thomas to testify as to his lack of criminal history under Rule 404(b).

The proffered evidence was important to Thomas' effort to counter the prejudicial effect of the government's evidence that he had sold a couple of doses of methamphetamine to Crosthwaite. In the absence of evidence of Thomas' clean record, it is reasonably likely that a jury would give significant weight to the government's evidence of the earlier $20 sales, even though that evidence was relatively weak and insubstantial as to the question of Thomas' predisposition to engage in multiple-pound methamphetamine deals. As we explained in *Skarie*, evidence that a defendant has used and sold methamphetamines at some undefined point in the past, without more, is insufficient to give rise to a jury question regarding predisposition. 971 F.2d 320–21; *see also Sherman v. United States*, 356 U.S. 369, 375–76, 78 S.Ct. 819, 822–23, 2 L.Ed.2d 848 (1958) (nine-year-old sales conviction and five-year-old possession conviction insufficient to prove predisposition to sell narcotics).

■ Finally, even if the proffered evidence were not admissible under Rule 404(b), we would still hold that it is admissible under Rule 405(b). To meet its burden of proof in the face of an entrapment defense, the government must prove predisposition beyond a reasonable doubt. *See, e.g., Jacobson*, 503 U.S. at 548–49, 112 S.Ct. at 1540–41. For the jury to find predisposition beyond a reasonable doubt, it must consider the defendant's character. *See, e.g., Skarie*, 971 F.2d at 320; *United States v. Citro*, 842 F.2d 1149,

1152 (9th Cir.1988); *Barry*, 814 F.2d at 1402; *So*, 755 F.2d at 1354. Although we have not labelled it as such, the well-settled rule that character must be considered is tantamount to a holding that it is an "essential element" of the defense, and we explicitly recognize it as such here. In doing so, we note our agreement in this respect as well with the position set forth by the Solicitor General in *Donoho*: The term "predisposition" "embraces the defendant's 'character' as well as his immediate intentions." *See Barry*, 814 F.2d at 1403 n. 6 (quoting Brief for the United States at 7, *Donoho v. United States*, 439 U.S. 811 (1978)). Here, because Thomas' character was an essential element relevant to the determination of whether he was predisposed to engage in large-scale drug trafficking, the proffered evidence, which was far more probative than prejudicial as to the question whether he had the requisite state-of-mind prior to Barruetta's repeated solicitation of him, was admissible under Rule 405(b).

■ The district court abused its discretion in failing to admit Thomas' evidence, and its error was not harmless. As we explained above, the government's evidence of predisposition was particularly weak and furthermore was potentially prejudicial unless cured by the admission of Thomas' countervailing evidence of his good character. Therefore, Thomas was prejudiced by the exclusion of the evidence, and he is entitled to a new trial.[7]

REVERSED AND REMANDED.

SKOPIL, Senior Circuit Judge, dissenting:

I write to express my disagreement with the majority's decision to reverse the district court on this evidentiary issue. Because the majority concludes that a new trial is required, it did not address Thomas' other

---

7. Because we have determined that the district court committed reversible error in refusing to allow testimony about Thomas' lack of a criminal record, we need to consider only one of the remaining claims: that the government offered insufficient evidence to prove predisposition and that Thomas was thus entrapped as a matter of law. While there was significant evidence at trial to prove that Barruetta induced Thomas to engage in the methamphetamine transaction,

when viewed in the light most favorable to the government the evidence was sufficient to show that Crosthwaite induced Thomas to participate. Because "[t]his circuit does not recognize the theory of derivative entrapment," *United States v. Bonanno*, 852 F.2d 434, 439 (9th Cir.1988), we cannot say that Thomas was entrapped as a matter of law regardless of the sufficiency of the evidence as to his predisposition. On that basis, we reject his insufficiency of the evidence claim.

substantial challenges to his conviction and sentence; I assume that if he is again convicted, he may renew those challenges in a subsequent appeal.

The majority elects to tackle the hard issue left unresolved in *United States v. Barry,* 814 F.2d 1400 (9th Cir.1987), namely whether, for purposes of an entrapment defense, a defendant has a right to introduce "good character" evidence. We did not reach that issue in *Barry* because we determined that the proffered evidence was not relevant. I contend that the same is true in this case. Accordingly, I would not decide whether Thomas' evidence is admissible under either Rule 404(b) or Rule 405(b).

The majority believes that Thomas' proffered evidence that he had no prior criminal or arrest record is relevant "because it would tend to make it more probable that the person had not previously engaged in criminal conduct." Thomas admitted to the jury, however, that he is a drug user and a drug seller. I do not agree with the majority that such admissions are "relatively weak and insubstantial as to the question of Thomas' predisposition" to engage in the drug deal at issue here. As the Third Circuit recognizes, "testimony that one has never been arrested is especially weak character evidence; a clever criminal, after all, may never get caught." *Government of Virgin Islands v. Grant,* 775 F.2d 508, 512 (3rd Cir.1985). The same is true here: Thomas' proffered evidence, in light of his admitted criminal activity, simply means that until now he had eluded arrest and conviction. I do not agree with the majority that Thomas is any less a drug seller because he had previously limited his criminal activity to friends.

I would affirm the district court's evidentiary ruling.