**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Francisco MENDOZA–PRADO, aka, Paco, Defendant–Appellant.**

**No. 01–10105.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 8, 2002.

Filed Dec. 31, 2002.

Karen L. Landau, Oakland, CA, for the defendant-appellant.

Lawrence J. Leigh and Stephen H. Jigger, Assistant United States Attorneys, Appellate Section, San Francisco, CA, for the plaintiff-appellee.

Before: HAWKINS, GRABER, and TALLMAN, Circuit Judges.

PER CURIAM:

Defendant Francisco Mendoza–Prado appeals his conviction, after a jury trial, of two cocaine-related offenses. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant met Donald Peralta in 1994, when Peralta was hired by the janitorial firm where Defendant worked. The two men became business and social friends while they worked together. They maintained a loose acquaintance after Defendant left his job at the janitorial firm.

In the fall of 1996, FBI Agent Mario Galindo undertook an investigation of drug trafficking in Redwood City, California. Agent Galindo knew Peralta, who had supplied him with information in the past. A primary target of the 1996 investigation was Defendant's brother Vicente. While reviewing relevant information, Agent Galindo noted that Peralta and Defendant had worked for the same company, so he decided to use Peralta as a cooperating witness.

In November 1996, Agent Galindo asked Peralta to renew his acquaintance with Defendant. Peralta agreed and began to report to Agent Galindo what he learned. Peralta testified at Defendant's trial to several conversations he had with Defendant concerning drugs, guns, and drug trafficking, but in which Peralta had not suggested that illegal activity be undertaken.

In August 1997, Agent Galindo rented an apartment in Redwood City, where Peralta's meetings with Defendant and others could be taped. Thereafter, Agent Galindo instructed Peralta to ask Defendant whether he knew anyone who could procure cocaine for Peralta's fictitious brother-in-law in Tennessee. Peralta telephoned Defendant on August 7 and followed the script provided by Agent Galindo. Initially Defendant replied that he did not know anyone, but later in the conversation said he did know someone who was "going to bring something" to Colorado. On another occasion Defendant told Peralta that Vicente would make the deal. Defendant and Peralta had several conversations in which Defendant gave assurances that this deal was "for sure" and would be "very easy" to arrange.

Eventually the deal was in fact arranged. On October 23, 1997, Defendant and a codefendant sold one kilogram of 90 percent pure cocaine to Peralta for $17,500, money that the government had supplied.

Agent Galindo then told Peralta to say that his brother-in-law wanted another five kilograms of cocaine. Peralta relayed that message to Defendant, who said that he would acquire the cocaine. Defendant and Peralta agreed to go together to meet the person who would sell it to them.

On December 20, 1997, Peralta and Agent Galindo (who was posing as Peralta's nephew) drove with Defendant and another person to a restaurant. There, Agent Galindo exchanged $35,000 for a bag containing 2,010 grams of 83 percent pure cocaine.

Following this sale, a 50–kilogram deal was discussed, but it never materialized.

In 2000, a federal grand jury returned a two-count superseding indictment. The first count charged Defendant (and others) with conspiracy to possess with intent to distribute, and conspiracy to distribute, more than five kilograms of cocaine, in violation of 21 U.S.C. § 846. The second count charged Defendant and another with possession with intent to distribute, and distribution of, more than 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

After a three-week trial, a jury found Defendant guilty on both counts. The district court imposed a 127-month sentence, plus a term of supervised release and a $200 special assessment. Defendant brings this timely appeal, challenging his convictions.

## DISCUSSION

### A. *Entrapment*

■ Defendant first argues that he was entrapped as a matter of law. To prove that claim, he must "point to undisputed evidence making it patently clear that an otherwise innocent person was induced to commit the illegal act by trickery, persuasion, or fraud of a government agent." *United States v. Smith*, 802 F.2d 1119, 1124 (9th Cir.1986). We generally review this claim de novo, *see United States v. Tucker*, 133 F.3d 1208, 1214 (9th Cir.1998), but will not disturb the jury's finding unless—viewing the evidence in the government's favor—no reasonable jury could have concluded that the government disproved the elements of the entrapment defense, *United States v. Jones*, 231 F.3d 508, 515–16 (9th Cir.2000).

At trial, Defendant testified that Peralta called him constantly and harassed him to find a provider of cocaine. By contrast, Peralta testified that the taped conversation on August 7, 1997, was the first time he had ever asked Defendant to obtain cocaine. The jury was not required to believe Defendant.

■ Defendant also argues that his friendship with Peralta induced him to commit the crimes. But Peralta did not invoke his friendship as a way to convince Defendant to arrange the drug deals. The mere suggestion to commit a crime does not amount to inducement, *United States v. Simas*, 937 F.2d 459, 462 (9th Cir.1991), even if the suggestion is made by a friend.

■ Even if Peralta's friendship created a feeling of obligation in Defendant, however, the jury properly could have found that Defendant was predisposed to commit the crimes. *See United States v. Thomas*, 134 F.3d 975, 978 (9th Cir.1998) (listing factors for courts to consider in deciding the issue of predisposition). A defendant's reluctance to engage in criminal activity is the most important factor to consider in deciding the issue of predisposition. *United States v. Martinez*, 122 F.3d 1161, 1163 (9th Cir.1997).

■ Here, Defendant showed no reluctance to commit the crimes. With very little inducement, he readily agreed to look for the cocaine sought by Peralta. He discussed the transactions several times, expressing no hesitation or change of heart. Additionally, Defendant's conversations demonstrated a prior familiarity with the drug trade. For example, when discussing an impending cocaine deal, Defendant remarked: "It's been years since I've seen anything as pretty as that damn stuff." Defendant knew about the price of cocaine in Europe and the process of cutting cocaine. And, although the government's agent made the initial suggestion for the specific transactions at issue, it was Defendant who first broached the general subject of drug trafficking and who subjected Peralta to various "tests" of trustworthiness, such as pointing a gun in Peralta's face to see how he handled fear and biting Peralta's finger and thumb to see how he handled pain. Finally, there is evidence suggesting that Defendant engaged in these narcotics transactions for profit.

We conclude that the issue of entrapment properly was left to the jury and that the jury permissibly found that Defendant was not entrapped.

### B. *Access to Impeachment Material*

■ Before trial, Defendant sought exculpatory and impeachment material concerning Peralta, who was the government's chief witness. *See Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (holding that the prosecution's suppression of material evidence favorable to the accused violates due process). The government disclosed Peralta's criminal history and its payments to him, but did not disclose false names that Peralta had used. The government submitted a list of Peralta's false names in camera to the district court, which withheld the information.

We review for clear error, *United States v. Strifler,* 851 F.2d 1197, 1202 (9th Cir. 1988), and find none. Having reviewed the materials, there is no reasonable probability that, had the evidence been disclosed, the result of the trial would have been different. *See United States v. Brumel–Alvarez,* 991 F.2d 1452, 1461 (9th Cir.1993) (stating standard).

### C. *Character Evidence*

■ Finally, Defendant argues that the district court improperly admitted evidence concerning his character. Specifically, the court admitted a transcript of a videotape, translated from Spanish, in which Defendant bragged about several uncharged crimes that he had committed. The crimes included making telephone calls worth about $5,000 while working as a janitor in a government building, stealing $30,000, harassing American tourists and extorting money from them while he was a police officer in Mexico, and helping someone escape from prison. We review for abuse of discretion the district court's decision to admit evidence of prior bad acts. *United States v. Castillo,* 181 F.3d 1129, 1134 (9th Cir.1999).

### 1. *Propensity*

The government argues that evidence of all prior bad acts is relevant in the face of an entrapment defense. Our cases do not reach that far.

■ Generally, evidence of character, or of prior bad acts, is inadmissible when used to prove a defendant's propensity to commit the crime in question. Fed. R.Evid. 404. When the defendant raises an entrapment defense, however, such evidence becomes relevant. If the government has induced the defendant to break the law, " 'the prosecution must prove beyond reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by Government agents.' " *Thomas,* 134 F.3d at 978 (quoting *Jacobson v. United States,* 503 U.S. 540, 548–49, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992)). The character of the defendant is one of the elements—indeed, it is an essential element—to be considered in determining predisposition. *Id.* at 978, 980. As Federal Rule of Evidence 405(b) provides: "In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may ... be made of specific instances of that person's conduct."

Nevertheless, we have held that evidence of prior bad acts is not relevant to prove predisposition unless the prior bad acts are similar to the charged crime. *United States v. Bramble,* 641 F.2d 681, 682 (9th Cir.1981). That is so because "no probative purpose is served unless a rational inference can be drawn from the prior act ... that one induced to perform [the charged crime] was predisposed to do so." *Id.* at 683 n. 2. In *Bramble,* we held that an earlier conviction for possession of marijuana was "not probative of[the defendant's] predisposition to sell cocaine" and that the admission of evidence concerning the prior conviction was reversible error.

*Id.* at 683; *see also United States v. Simtob,* 901 F.2d 799, 807 (9th Cir.1990) (setting standards for admission of prior-bad-acts evidence to prove predisposition).

The government argues that the logic of our later opinion in *Thomas* undercuts those cases that require "propensity" evidence to be about acts that are reasonably similar to the charged crime. In *Thomas,* a prosecution for trafficking in a substantial quantity of methamphetamine, the defendant offered an entrapment defense. The government introduced evidence that Thomas was an occasional methamphetamine user and that he had sold two single doses of methamphetamine. In response, Thomas sought to testify that he had never been arrested or convicted of any crime. *Thomas,* 134 F.3d at 979. The district court disallowed the testimony, and we reversed. We explained that,

> [f]or the jury to find predisposition beyond a reasonable doubt, it must consider the defendant's character. Although we have not labelled it as such, the well-settled rule that character must be considered is tantamount to a holding that it is an "essential element" of the defense, and we explicitly recognize it as such here. . . . [B]ecause Thomas' character was an essential element relevant to the determination of whether he was predisposed to engage in large-scale drug trafficking, the proffered evidence, which was far more probative than prejudicial as to the question whether he had the requisite state-of-mind prior to [the government informant's] repeated solicitation of him, was admissible under Rule 405(b).

*Id.* at 980 (citations omitted).

If Thomas could introduce evidence about his arrest-free and conviction-free past life in all respects, the government argues, then the government should be able to introduce evidence having a similar scope. Even if we were free to overrule

*Bramble* and similar cases—which of course we are not—we are not persuaded. The two situations are different, so the two lines of cases coexist peacefully.

When a defendant argues that he was not predisposed to commit *a particular* crime, the only relevant response from the government is one that bears on his propensity to engage in *that kind* of criminal activity. For example, a person who has been convicted of reckless driving does not necessarily have a propensity to cheat on his taxes.

■ But when, in a hypothetical tax-evasion case, the government introduces evidence that the defendant has previously cheated private parties, the defendant may respond by rehabilitating his character generally. If the defendant has *never* been arrested or convicted of *any* crime, the jury can infer that the person did not commit any prior bad acts, including the ones to which the government's evidence alludes. By contrast, a rule that permitted the defendant only to deny specific bad acts would create the risk of a "negative pregnant": If he could testify only that he has never been convicted of tax evasion, a jury reasonably may wonder whether he has committed other crimes, from assault to possession of heroin.

Because the inferences that can be drawn in the two situations are not parallel, there is no reason why the rules governing a defendant's good-character evidence and the government's bad-character evidence must be parallel.

Here, evidence of the prior bad acts was not admissible to prove propensity. Theft, extortion, and aiding a prison escape, although obviously serious crimes, bear little relationship to the drug-trafficking crimes with which Defendant was charged.

### 2. Rebuttal

█ We do agree with the government's alternative argument, which is that its evidence rebutted Defendant's own character evidence. The government may introduce otherwise inadmissible evidence when the defendant " 'opens the door' by introducing potentially misleading testimony." *United States v. Beltran–Rios*, 878 F.2d 1208, 1212 (9th Cir.1989). Under Federal Rule of Evidence 404(a)(1), character evidence is admissible when offered by the prosecution to rebut "[e]vidence of a pertinent trait of character offered by an accused." "[W]hen the defendant 'opens the door' to testimony about an issue by raising it for the first time himself, he cannot complain about subsequent government inquiry into that issue." *United States v. Hegwood*, 977 F.2d 492, 496 (9th Cir.1992).

Testimony from Defendant and a character witness placed Defendant's general character in issue. Indeed, in a lengthy colloquy with the court, defense counsel explained that the defense intended to address the issue of character through affirmative evidence during the defense case, even if that tactic meant opening the door to negative character evidence on rebuttal.

█ Defendant testified that he was a family man who was busy providing for his family and lacked the time, the inclination, and the courage to become involved in dealing cocaine. For example, he testified that he was "not interested in that narcotics and stuff" because he was "a working man and a family man." He testified that he worked hard as the sole provider for his family and that he "was afraid to get involved in some drugs." He also testified that he had significant legitimate income in 1997 (about $40,000) to counter the suggestion that he wanted or needed additional money from dealing drugs. A defense witness testified that, during the period in question, Defendant worked long hours in construction and took no significant time off. His testimony implied that Defendant was law-abiding and hard-working. Defense counsel expressly argued that devotion to family and hard work were signs of good character for the jury to consider.

The foregoing evidence of general good character opened the door to the government's evidence of prior bad acts to demonstrate bad character.

### 3. Weighing

Defendant argues that, even if the evidence was otherwise admissible, the danger of unfair prejudice substantially outweighed its probative value. *See* Fed. R.Evid. 403. The district court did not abuse its discretion in coming to the opposite conclusion. Had the government's evidence been excluded, the jury might have been misled into believing that Defendant was merely a hard-working, upstanding citizen who was bewildered by crime and badgered into the drug deals in question.

AFFIRMED.