[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-15536
_____

D.C. Docket No. 0:14-cr-60083-DPG-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

RICHARD RUTGERSON,

Defendant – Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 12, 2016)

Before MARCUS, JORDAN and BLACK, Circuit Judges.

MARCUS, Circuit Judge:

Defendant Richard Rutgerson, using an internet site frequented by prostitutes and their clients, responded to a posting by Amberly, who described herself as a "sweet petite young lady." Amberly answered Rutgerson's message, offering in veiled terms to have sex with him for money and revealing that she was 15 years old. Undeterred as long as they were discreet, Rutgerson proceeded to arrange a meeting with Amberly where he expected to pay her for sex. Upon arriving at the hotel designated for their rendezvous, Rutgerson was surprised to learn that Amberly was not a 15-year-old prostitute, but rather a creation of the Fort Lauderdale Police Department, whose officers arrested him. Rutgerson was charged and convicted of attempting to persuade, induce, entice, or coerce a minor into engaging in prostitution or unlawful sex, in violation of 18 U.S.C. § 2422(b).

On appeal, Rutgerson challenges the sufficiency of the evidence supporting his conviction, arguing that he could not have persuaded, induced, enticed, or coerced a minor into engaging in prostitution when the minor has held herself out as a prostitute before he made contact with her. We disagree. Where an underage prostitute holds herself out as willing to engage in sex for money, the offer to pay that money qualifies as sufficient inducement under § 2422(b). We also conclude that Rutgerson is not entitled to relief based on the district court's refusal to deliver a confusing and erroneous jury instruction requested by Rutgerson or in its exclusion of particular evidence. Accordingly, we affirm.

2

**I.**

On April 24, 2014, a grand jury sitting in the United States District Court for the Southern District of Florida indicted Rutgerson with one count of:

> using any facility and means of interstate commerce, [to] knowingly attempt to persuade, induce, entice, and coerce an individual who had not attained the age of eighteen years, to engage in prostitution or any sexual activity for which a person can be charged with a criminal offense, in violation of Title 18, United States Code, Section 2422(b).

Rutgerson's case proceeded to a jury trial on August 25, 2014.

At trial, the government first called Detective Robert Mauro, who was part of the Fort Lauderdale Internet Crimes Against Children task force. Detective Mauro testified that Rutgerson replied to an ad that he and Detective Jennifer Montgomery posted on backpage.com as part of an operation that targeted child predators on the Internet.

The ad was posted on January 23, 2014, and was titled:

> ❤❤❤ SwEEt Petite yOung Lady...❤❤❤ Come See Me!! ❤AMBERLY❤ Ft Laud❤ - 99.

The ad included photos of a woman's stomach and legs and read this way:

> Hi, I'm Amberly. . .pics are 100% real ((promise)).....
> New 2 BP and hOping tO like it here ❤
>
> i'm 5'2, 103 lbs, grEEn EyeS with a swEEt bAby dOLL
> sMile ❤

3

i PreFer mature upScale GENTLEmen who like the cOmpany of a petite yOung lady and Enjoy bEing paMpered & spOiled. If this sounds like you, hit me Up!

i'm juSt an email or pHonE cALL aWay!! Come see MEEEE! ! ! ❤❤❤

❤

Gmail me @cutieamberly99 for my #

Poster's age: 99

Mauro testified that he had been trained how to sound like a child online, using typos, spelling errors, slang, and words that adults typically do not use as much as children. He explained that the heart symbols and the spelling that alternated between capital and lowercase letters were indicative of how a teenager texted and communicated on the internet. The words "petite" and "young" indicated that the poster was under 18. Maura testified that, through his training and experience, he knew that the number 99, in the underage prostitution world, is code for a child, so the 99 in the ad was a "big hint" that the person posting the ad was underage. The woman in the pictures was actually Detective Montgomery, taken when she was 34 years old.

On January 22, 2014, Richard Rutgerson responded to the e-mail address listed in the ad. Mauro, playing the role of Amberly, replied. Their conversation

4

continued via email and text message for the next two days, culminating in a meeting for sex and Rutgerson's arrest at a La Quinta Inn in Plantation, Florida.

The government introduced a composite exhibit of the e-mail exchange between Rutgerson and Amberly. The conversation began:

> **Rutgerson**: Hi babe.
>
> Can you tell me more about you?
>
> **Amberly**: im available tomorrw... im new on here and fyi im young. bp [backpage.com] shut down my ad twice thats why I cant put a phone # now cuz they kno its me. what are u lookn for
>
> **Rutgerson**: I'm looking for a playmate.
>
> What are you looking for?
>
> **Amberly**: im on bp. . . wat do you think lol are you good with a young playmate or no
>
> **Rutgerson**: How young are you?
>
> Where will you be available?
>
> **Amberly**: im 15 bu ppl say i look older. im clean and descreet. im gonna be near ft laud airport
>
> **Rutgerson**: Can you send me more pictures?
>
> Ya. I'm fine. So long as we're discrete.
>
> What do you like to do? What are your rules?

In subsequent emails, Rutgerson again asked Amberly what she liked to do and what her "rules" were. She responded that her rules were that he could not

"tattle" about her age, pee on her, or do anything that hurt.  Amberly asked what he wanted to do, and Rutgerson replied that he was looking on Backpage, so "what do you think[?]"  Rutgerson asked how Amberly could get a hotel room and whether she was working with someone else. She told him that she was working with a 17-year-old friend named Nicki who was in charge and set the rules.

Rutgerson asked how much it would cost to meet with her, and she told him it depended on what he wanted.  He asked, whether she was available for GFE, PFE, or other extras.  Mauro testified that, in the prostitution world, "GFE" meant "girlfriend experience," meaning that it involved a sexual encounter and included something more romantic like cuddling or hand holding.  "PSE" means "porn star experience," which means "straight sex, a little more of the hardcore sex, nothing like the girlfriend experience."  "Extras" referred to different fetishes.  Rutgerson also asked, "Do you masterbate? Do you cum easy? Do you like to be eaten out?"

After those e-mail communications, Rutgerson texted Amberly's phone. The government then introduced a series of text messages between Rutgerson and Amberly, which started near midnight on January 22 and continued into the early morning hours of January 23.  Rutgerson asked, "So how much?" and, "How much to meet?"  Amberly responded:

> **Amberly**: depends wat u want.. i told u. i dont meet to hang out n i kno thats not wat ur gonna pay for
>
> **Rutgerson**: GFE?

6

> **Amberly**: an hour gfe i can do for $175  extras depends
> wat extras u want

Rutgerson proposed various "extras" in which he was interested.  Amberly said she

was fine with whatever he wanted, except for "Greek," which Mauro explained

meant anal sex.  The conversation continued:

> **Rutgerson**: Ok. $?
>
> **Amberly**: i  like  condoms  but  maybe  i  can  make
> exception
>
> for an hour?!?! $200
>
> . . .
>
> **Rutgerson**: Ok. Can we do it more than once?
>
> **Amberly**: whatevr u wanna squeeze into the hr is fine
>
> **Rutgerson**: How about 2 hours for 300

Rutgerson also asked Amberly if she enjoyed receiving oral sex, saying, "I want

you to cum too ;-)."

During the conversation, Amberly pressed Rutgerson to get out of work and

come see her.  She said that she was leaving that night so he had to hurry.  He told

her that he would not be able to meet her that night and that she should go ahead

and take another date.  Amberly then said that she would be staying in town for a

little while longer.  He responded that he wanted the first date she had on Friday or

Saturday night, so he could get her "fresh."  He asked if he could have sex without

7

a condom and whether she was on birth control.  Amberly responded, "y...u wanna cum inside me? thats more $ but u kno that."

Rutgerson attempted to get Amberly to come from Fort Lauderdale to meet him in Miami.  He offered to pick her up or to get a hotel room in Miami.  She refused, explaining that she was 15 and could not drive.  On January 24, 2014, Rutgerson texted that he had gotten off work early and offered to drive the hour to Fort Lauderdale if Amberly was still available.  She gave him the address of a La Quinta Inn in Plantation, told him to hurry, and advised him to "bring $ n stop playin games."  He told her that he was on his way.  Rutgerson sent Amberly a series of text messages from the car as he drove to Fort Lauderdale and showed no reluctance to have sex with a 15-year-old in those text messages.

Mauro and other officers arrested Rutgerson when he arrived at the hotel in Fort Lauderdale.  Mauro interviewed Rutgerson after explaining his Miranda rights.  The recording of that interview was introduced and played before the jury.  In the interview, Mauro asked Rutgerson if he thought he was going to have a sexual encounter with a 15-year-old.  Rutgerson replied that he did not know what was going to happen until he got there and that he "was just coming to hang out," but that "nine times out of ten that's what happens."  Rutgerson further admitted that he believed Amberly was 15 years old when he was texting and e-mailing her.

8

The interview also contained the following exchange, which was read to the jury by the prosecutor and Detective Mauro:

> **Det. Montgomery**: Do you think she was lying about her age, did you suspect she was, or did you think she sounded like she might be telling the truth?
>
> **Rutgerson**: I think it could have gone either way.  I think I couldn't honestly believe someone that young was doing that, so either there was someone forcing her to do that and I thought -- I hope -- I hope I would have seen the distress when I . . . met her.

He also said that he had "no bad intentions" and that he would have liked to believe that he would have done "nothing indecent" if he felt that she was underage.

On cross-examination, Mauro testified that he could not remember any time when he had seen a minor posting with an age other than 99.  Rutgerson also introduced a number of Backpage ads with posters that claimed they were adults but that contained heart symbols, upper- and lowercase letters, and words like "petite," "young," and "sweet."  Mauro agreed that he had investigated Rutgerson "very thoroughly" and that he had never learned that Rutgerson had any of the training that enabled Mauro to identify the number 99, hearts, or capital letters as being indicia of a minor posting.

The government next called Detective Nicholas Masters.  Masters testified about the sting operation and Rutgerson's arrest.  He stated that, when Rutgerson

was arrested, he found $400 and two condoms in Rutgerson's front pocket, as well as a large amount of cash in Rutgerson's wallet and other pockets. He added that he searched Rutgerson's car where he discovered an iPhone and more condoms. The government also called Special Agent Daniel Johns, who worked with the Federal Bureau of Investigation and was the liaison with the Internet Crimes Against Children task force at the Broward Sherriff's Office. Johns testified that no specific sex acts were mentioned before Rutgerson asked about whether "GFE," "PSE," or "extras" were available. Amberly indicated that she was underage many times, having made references to her age and to her inability to drive or rent a hotel room. Rutgerson emailed, called, or text messaged her 114 times in total.

Johns also testified that he had searched the internet history on Rutgerson's phone. His web history contained hundreds of searches on Backpage and other sites involving escorts or prostitution. Johns said that Rutgerson searched for pornography on his iPhone, but discovered only commercially available adult pornography, not child pornography. Indeed, Johns did not find any child pornography on Rutgerson's iPhone.

The government rested at the close of Detective Johns's testimony. Rutgerson then moved the court for a judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29, on three grounds. First, he argued that the government had not carried its burden of proof in two ways. He claimed that the

evidence was insufficient to allow the jury to find beyond a reasonable doubt that Rutgerson had any "intent to influence the will of" Amberly.  The government had presented only a solicitation case, he argued, and solicitation has not been criminalized by 18 U.S.C. § 2422(b).  Second, Rutgerson insisted that the government had not presented any evidence to rebut his entrapment defense by showing that he was predisposed to engage in sex with a minor.  He maintained that "[t]his statute is a child predator statute," not a soliciting statute.  The government's broad definition of "persuade, induce, entice or coerce" had effectively moved a "purely local crime[] . . . into the realm of Federal court," rendering it unconstitutional in violation of "principles of federalism."  Finally, Rutgerson said that, even if his other arguments failed, to the extent that the statute's terms were ambiguous, the rule of lenity demanded that the district court adopt a narrower interpretation of the phrase "persuades, induces, entices, or coerces."  The district judge denied the Rule 29 motion in its entirety.

Rutgerson called two witnesses on his behalf.  The first, Timothy Jones, testified that Rutgerson left work at around 5:00 p.m. on January 23.  Rutgerson argued that this established that his work had not prevented him from seeing Amberly that day, as his text messages to her had indicated.  The other witness was Valerie Rivera, a licensed private investigator.  She had Googled the many websites and names that came up in Rutgerson's iPhone history.  Through her,

Rutgerson entered into evidence images of the websites that the detectives had uncovered in his iPhone history.

After the close of his case, Rutgerson renewed his Rule 29 motion for a judgment of acquittal. The district court again denied the motion because "there [was] sufficient evidence to proceed."

The court instructed the jury regarding the elements of attempting to entice, persuade, or induce a minor to engage in prostitution or unlawful sexual activity. It also provided an entrapment instruction.

In closing argument, Rutgerson made two basic points. First, he attempted to convince the jury that the government had not proven beyond a reasonable doubt that he believed Amberly was a minor. He noted that the pictures on her profile appeared to be of an older woman, and that he had expressed doubt that a fifteen-year-old could rent a hotel room. Second, he argued that the evidence all pointed to Amberly having persuaded him to meet for sex, that she made her agreement to have sex clear from the outset, and thus that there was no evidence that he intended to persuade her to have sex.

On August 28, 2014, the jury found Rutgerson guilty of having violated 18 U.S.C. § 2422(b). And on December 5, 2014, the court sentenced him to the mandatory minimum prison term of 10 years.

This timely appeal followed.

12

**II.**

Rutgerson first argues that the evidence was insufficient to support his conviction under § 2422(b), or that he was predisposed to violate the statute. We review the sufficiency of the evidence de novo. United States v. Ramirez, 426 F.3d 1344, 1351 (11th Cir. 2005). We are required to affirm Rutgerson's conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Hunt, 187 F.3d 1269, 1270 (11th Cir. 1999) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Thus, we view "all the evidence in the light most favorable to the government and draw[] all reasonable inferences and credibility choices in favor of the jury's verdict." United States v. Boffil-Rivera, 607 F.3d 736, 740 (11th Cir. 2010) (quoting United States v. Taylor, 480 F.3d 1025, 1026 (11th Cir. 2007)). Because Rutgerson was charged with attempt, sufficient evidence would support his conviction if a reasonable jury could have found beyond a reasonable doubt that he "(1) had the specific intent or mens rea to commit the underlying charged crimes, and (2) took actions that constituted a substantial step toward the commission of [each] crime." United States v. Lee, 603 F.3d 904, 913-14 (11th Cir. 2010) (quoting United States v. Yost, 479 F.3d 815, 819 (11th Cir. 2007)).

Based on our review of the evidence adduced at trial, we are satisfied that a reasonable jury could have found that Rutgerson attempted to induce Amberly to

13

have sex with him, as proscribed by § 2422(b).  The evidence established that he energetically pursued Amberly over three days in an attempt to induce her to agree on a price, terms, time, and location for a sexual encounter.  Moreover, a reasonable jury could also have found (as it obviously did) that Rutgerson was predisposed to commit the charged crime and thus had not been entrapped.  He readily committed the crime and expressed no hesitation about having sex with Amberly when she informed him that she was only 15 years old.

## A.

Rutgerson was convicted of attempting to violate 18 U.S.C. § 2422(b).  The statute provides:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2422(b).  Thus, the government had to prove that (1) Rutgerson "acted with the specific intent to persuade, induce, entice or coerce [Amberly] to engage in criminal sexual activity," and (2) "took a substantial step toward the commission of the underlying crime[]."  Yost, 479 F.3d at 819.  "The underlying criminal conduct that Congress expressly proscribed in passing § 2422(b) is the persuasion,

inducement, enticement, or coercion of the minor rather than the sex act itself." United States v. Murrell, 368 F.3d 1283, 1286 (11th Cir. 2004).

We have held that the terms persuade, induce, and entice in § 2422(b) should be given their ordinary meaning. United States v. Panfil, 338 F.3d 1299, 1301 (11th Cir. 2003). That is precisely what the district court did here. The judge instructed the jury:

> As used in this instruction, persuade means to win over, by an appeal to one's reason and feelings, into doing or believing something.
>
> Induce means to stimulate the occurrence of or to cause.
>
> Entice means to lure or attract by arousing hope or desire.

These definitions are in line with the ordinary meaning of those terms. Indeed, the definition of "induce" exactly matches the definition we endorsed in Murrell, 368 F.3d at 1287. Similarly, the definitions of "persuade" and "entice" match their ordinary meanings. See "Persuade," Merriam-Webster Unabridged Dictionary (3d ed. 2015) ("[W]in over by an appeal to one's reason and feelings (as into doing or believing something)"); "Entice," Merriam-Webster Unabridged Dictionary (3d ed. 2015) ("[T]o draw on by arousing hope or desire"). With these definitions in mind, there was more than enough evidence to support the jury's finding that Rutgerson was guilty of attempting to persuade, induce, or entice Amberly to engage in prostitution with him.

15

First, it is undisputed that Rutgerson initiated contact with Amberly after seeing her ad and indicated that he was looking for a "playmate." More importantly, the jury reasonably could have concluded that Rutgerson offered to pay a sum of money to Amberly in order to induce her to agree to have sex with him. By definition, this constitutes a violation of § 2422(b). So far as Rutgerson knew, Amberly would not agree to have sex with him without receiving payment. Thus, his offer of money was a clear attempt to persuade, induce, or entice her into having sex with him. A reasonable jury could easily have found Rutgerson guilty of violating § 2422(b) based on this fact alone.

Moreover, contrary to the defendant's argument, this was not simply a "market transaction" whereby Rutgerson passively accepted an offer posed by Amberly. Passing over whether this argument would even constitute a defense, it is plainly not supported by the facts here. Instead, the evidence showed that Rutgerson engaged in active negotiations as to price and the particular sexual activities in which he wished to engage. Amberly told Rutgerson she could do "an hour gfe [] for $175." Rutgerson responded by suggesting various extras, including oral sex, using his fingers to penetrate her, and not wearing a condom. She replied that the price would be $200 for an hour with his extras. Rutgerson asked whether it would be possible to do two hours for $300. This continued negotiation undoubtedly forms part of Rutgerson's efforts to persuade, induce, or

16

entice Amberly to have sex with him.  Indeed, there is not the slightest suggestion in this record that Amberly held herself out as being willing to engage in sex acts with Rutgerson in the absence of being induced by the offer to pay her a substantial sum of money.

Nor was the offer of money the only means by which Rutgerson attempted to persuade, induce, or entice Amberly.  He also engaged in explicit sexual dialogue, including telling Amberly that he "want[ed] her to cum too," and repeatedly asked what sex acts she would assent to and what she enjoyed.  A reasonable jury could interpret this dialogue as suggesting that Rutgerson was trying to persuade Amberly that she would enjoy having sex with him, thus further enticing her into agreeing to have sex with him.

To the extent that Rutgerson suggests that an underage prostitute who holds herself out for sex cannot be induced within the meaning of § 2422(b) as a matter of law, he is mistaken.  According to Rutgerson, the "question is not whether Rutgerson believed that Amberly would have had sex with him in the absence of payment," but rather whether he believed she "was prepared to have sex with anybody who paid her price -- i.e., that this was the business she chose -- such that no external inducement, enticement, or persuasion was necessary."  This flouts the plain meaning of § 2422(b).  The statute criminalizes attempting to induce a minor to "engage in prostitution or any sexual activity for which any person can be

17

charged with a criminal offense." 18 U.S.C. § 2422(b). Each time Amberly, a fifteen-year-old, assented to have sex with an adult in exchange for money, she was engaging in "prostitution" or sexual activity that "can be charged with a criminal offense." That many individuals might have sought to induce or entice the same underage prostitute to engage in sex for money -- even if each one was successful -- does not immunize Rutgerson from prosecution under § 2422(b). The essential point is that Rutgerson attempted to persuade or induce Amberly to engage in sex with him by offering to pay her money (and a substantial amount at that) for her services. Rutgerson's claim that he believed Amberly would agree to have sex with anyone who paid her price essentially gives away the argument. It (correctly) assumes that her agreement to have sex was dependent on the payment of money. As we have already observed, offering or agreeing to pay money in exchange for engaging in various sex acts qualifies as inducement within the meaning of the statute; it was the necessary element that would cause Amberly to agree to have sex with Rutgerson.

## B.

Rutgerson also argues that even if the evidence was sufficient to establish a violation of § 2422(b), he should not have been convicted because he was entrapped into committing the crime as a matter of law. Entrapment is an affirmative defense that requires (1) government inducement of the crime, and (2)

18

lack of predisposition on the part of the defendant to commit the crime before the inducement.  United States v. Orisnord, 483 F.3d 1169, 1178 (11th Cir. 2007); United States v. Ryan, 289 F.3d 1339, 1343 (11th Cir. 2002).   The defendant bears the initial burden of production as to the government inducement and he may meet this burden by producing any evidence that is sufficient to raise a jury question that the government "created a substantial risk that the offense would be committed by a person other than one ready to commit it."  Ryan, 289 F.3d at 1343-44 (quoting United States v. Brown, 43 F.3d 618, 623 (11th Cir. 1995)).  "The defendant may make such a showing by demonstrating that he had not favorably received the government plan, and the government had had to 'push it' on him, or that several attempts at setting up an illicit deal had failed and on at least one occasion he had directly refused to participate."  United States v. Andrews, 765 F.2d 1491, 1499 (11th Cir. 1985) (citations omitted).

Since entrapment is generally a jury question,[1] entrapment as a matter of law is a sufficiency-of-the-evidence inquiry that we review de novo, viewing all facts

---

[1] The district court delivered the following instruction regarding entrapment:

> Entrapment occurs when law enforcement officers or others, under their direction, persuade a Defendant to commit a crime that the Defendant had no previous intent to commit.

> The Defendant has claimed to be a victim of entrapment regarding the charged offense.

and making all inferences in favor of the government.  United States v. King, 73

F.3d 1564, 1568 (11th Cir. 1996).  Where, as here, the jury has rejected an

entrapment defense and government inducement is not at issue, "our review is

limited to deciding whether the evidence was sufficient for a reasonable jury to

conclude [beyond a reasonable doubt] that the defendant was predisposed to take

part in the illicit transaction."  Brown, 43 F.3d at 622.

Predisposition is a fact-intensive and subjective inquiry, requiring the jury to

consider the defendant's readiness and willingness to engage in the charged crime

absent any contact with the government's agents.  Brown, 43 F.3d at 624; Jacobson

v. United States, 503 U.S. 540, 548-49 (1992) (holding that once government

inducement is shown, "the prosecution must prove beyond reasonable doubt that

the defendant was disposed to commit the criminal act prior to first being

approached by Government agents.").  We have rejected creating a "fixed list of

The law forbids convicting an entrapped defendant, but there is no entrapment, when a defendant is willing to break the law and the Government merely provides what appears to be a favorable opportunity for the Defendant to commit a crime.

For example, it is not entrapment for a Government agent to pretend to be someone else and after, directly or through another person, to engage in an unlawful transaction.

So a Defendant is not a victim of entrapment, if you find beyond a reasonable doubt that the Government only offered the Defendant an opportunity to commit a crime the Defendant was already willing to commit.

But if there is a reasonable doubt about whether the Defendant was willing to commit the crime without the persuasion of a Government officer or a person under the Government's direction, then you must find the Defendant not guilty.

20

factors" for evaluating an entrapment defense, but we have posited "several guiding principles":

> Predisposition may be demonstrated simply by a defendant's ready commission of the charged crime. A predisposition finding is also supported by evidence that the defendant was given opportunities to back out of illegal transactions but failed to do so. Post-crime statements will support a jury's rejection of an entrapment defense. Existence of prior related offenses is relevant, but not dispositive. Evidence of legal activity combined with evidence of certain non-criminal tendencies, standing alone, cannot support a conviction. Finally, the fact-intensive nature of the entrapment defense often makes jury consideration of demeanor and credibility evidence a pivotal factor.

Brown, 43 F.3d at 625 (citations omitted).

Viewing the evidence in the light most favorable to the government, a variety of factors support a finding that Rutgerson was not entrapped as a matter of law. In the first place, Rutgerson made the initial contact with Amberly and, after she said that she was 15, Rutgerson readily proceeded to attempt to arrange a sexual encounter with her. She repeatedly asked if he was okay with her tender age, and he replied that he was okay as long as they were discreet. Rutgerson never once said that he did not want to have sex with a 15-year-old (even as he was repeatedly advised of Amberly's age), and, as we have outlined the facts, persistently pursued Amberly over three days in an attempt to agree on a price, rules, time, and location for a sexual encounter.

21

Second, Rutgerson did not back out of his meeting with Amberly and never expressed any hesitation about having sex with a minor, although he repeatedly had the opportunity. Indeed, he drove from Miami to Fort Lauderdale for the purpose of paying her for sex. He repeatedly rescheduled his date with her after his work kept interfering. And in spite of the expressed concerns that Amberly was not real or was part of a sting operation, Rutgerson continued to pursue a sexual encounter with her. Cf. Lee, 603 F.3d at 915 (concern that online person defendant intends to have sex with is part of a sting operation supports a relevant inference of guilt because "a relationship with . . . an adult[] would not have concerned law enforcement"). In the third place, his post-arrest statements were quite damning: he stated that he believed he was texting and e-mailing a 15-year-old, and that while he was not sure what was going to happen when he got there, "nine times out of ten" a sexual encounter happens. Fourth, and finally, although there was no evidence of prior related offenses, the government introduced evidence that, before reaching out to Amberly, Rutgerson had accessed numerous ads for "young" prostitutes online. Plainly, Rutgerson was familiar with the website he used to locate Amberly's ad. While there was no evidence that the other prostitutes Rutgerson contacted were under 18, his search history suggests that he was predisposed to attempt to entice young women into having sex.

22

The long and short of it is that the government agents "simply provided [Rutgerson] with the opportunity to commit a crime" by posting the backpage ads, and his "ready commission of the criminal act amply demonstrate[d] [his] predisposition." See Jacobson, 503 U.S. at 550. The evidence supports the jury's verdict.

### III.

Rutgerson argues next that the district court erred by refusing to give a proposed theory of the defense instruction to the jury. We review a refusal to give a requested jury instruction for abuse of discretion. United States v. Duperval, 777 F.3d 1324, 1331 (11th Cir. 2015). A trial court enjoys broad discretion to formulate jury instructions provided those instructions are correct statements of the law. United States v. Merrill, 513 F.3d 1293, 1305 (11th Cir. 2008). A refusal to incorporate a requested instruction will be reversed only if "(1) the requested instruction was substantively correct, (2) the court's charge to the jury did not cover the gist of the instruction, and (3) the failure to give the instruction substantially impaired the defendant's ability to present an effective defense." United States v. Culver, 598 F.3d 740, 751 (11th Cir. 2010) (quoting United States v. Klopf, 423 F.3d 1228, 1241 (11th Cir. 2005)). An instruction that tracks the statute's text will almost always convey the statute's requirements. United States v. Hurn, 368 F.3d 1359, 1362 (11th Cir. 2004). "Under our deferential standard of

review, we reverse only if 'we are left with a substantial and [in]eradicable doubt as to whether the jury was properly guided in its deliberations.'" United States v. Browne, 505 F.3d 1229, 1276 (11th Cir. 2007) (quoting United States v. Eckhardt, 466 F.3d 938, 948 (11th Cir. 2006)); accord McCormick v. Aderholt, 293 F.3d 1254, 1260 (11th Cir. 2002).

Rutgerson proposed the following jury instruction:

> It is a theory of defense that Mr. Rutgerson did not violate the statute he is charged with because he did not persuade, induce, entice, or coerce a person who he believed was under 18 to engage in prostitution or unlawful sexual activity, or attempt to do so.
>
> To prove Mr. Rutgerson guilty of Count 1, the government must prove beyond a reasonable doubt that Mr. Rutgerson intended to persuade, induce, entice, or coerce Detective Montgomery and that he believed her to be under 18 years old, not that he acted with the intent to engage in sexual activity with her.
>
> If you believe that Detective Montgomery presented as [a] 15-year old who was ready and willing to engage in sexual activity with Mr. Rutgerson, but that Mr. Rutgerson did not persuade, induce, entice, or coerce Detective Montgomery to do so, then you must find Mr. Rutgerson not guilty. Under these circumstances, you must find Mr. Rutgerson not guilty even if you believe that he intended to engage in sexual activity with Detective Montgomery and that he believed she was under 18 years old.
>
> On the other hand, if you believe that the evidence establishes beyond a reasonable doubt that Mr. Rutgerson did persuade, induce, entice, or coerce Detective Montgomery to engage in unlawful sexual activity, and

24

that he believed she was under 18 years old, you should
find him guilty.

The district court determined that the proposed instruction was a substantive

instruction, not a theory of the defense instruction, and declined to give it.  The

court initially agreed, however, to give the first paragraph of the instruction in a

slightly modified form.  But in response to a government objection, the court

declined to give even the modified version.  The district court observed that, while

Rutgerson had not been charged with statutory rape, a minor could not consent in

any event, so the instruction was not appropriate.

The district court ultimately gave the jury an instruction that largely tracked

the statutory language of § 2422(b).[2]  The court further instructed the jury that

---

[2] The district court's instruction to the jury read as follows:

> It is a federal crime for anyone using any facility or means of interstate or foreign commerce including transmissions by computer on the internet, to persuade, induce, entice, or coerce anyone under 18 years old to engage in prostitution or any sexual activity for which any person could be charged with a criminal offense.
>
> The Defendant can be found guilty of this crime only if all of the following facts are proved beyond a reasonable doubt:
>
> > One, the Defendant knowingly persuaded, induced, enticed or coerced Amber Lee to engage in prostitution or unlawful sexual activity, as charged;
> >
> > two, the Defendant used a computer or telephone to do so;
> >
> > Three, when the Defendant did these acts, he believed Amber Lee was less than 18 years old; and
> >
> > four, one or more of the individuals engaging in the sexual activity could have been charged with a criminal offense under the law of Florida.

25

Rutgerson could be found guilty of using a computer to entice a minor to engage in unlawful sexual activity only if the government proved beyond a reasonable doubt, along with the other elements, that Rutgerson "knowingly persuaded, induced, enticed or coerced [Amberly] to engage in prostitution or unlawful sexual activity as charged." It also explained what it means to attempt to violate the statute.

As an initial matter, we agree with the district court that Rutgerson's proposed instruction was a substantive instruction on the statute, not a theory of the defense. The proposed instruction did not simply seek to describe what the defense was arguing, but rather sought to define the law by which the jury was to decide the case. But the district court already outlined -- and ultimately delivered to the jury -- a wholly appropriate instruction on the substantive law governing the case. The instruction actually given to the jury tracked the statutory text,

So the Government must prove that one or more of the individuals engaging in the sexual activity could have been charged with a criminal offense under the laws of Florida.

As a matter of law, the following acts are crimes under Florida law: Sexual activity with a person under the age of 18.

As used in this instruction, persuade means to win over by an appeal to one's reason and feelings, into doing or believing something.

Induce means to stimulate the occurrence of or to cause.

Entice means to lure or attract by arousing hope or desire.

As used in this instruction, the term prostitution means engaging in or agreeing or offering to engage in any lewd act, with or for another person, in exchange for money or other consideration.

appropriately and correctly conveying the law to the jury.  See Hurn, 368 F.3d at 1362.  Because the proposed instruction was actually substantive, the gist of what Rutgerson proposed had already been covered.  Indeed, offering a second substantive instruction covering the same ground was unnecessary and would likely have proven confusing.

That confusion would likely have been compounded because Rutgerson's proposed instruction was substantively incorrect.  The proposed instruction informed the jurors that they could find Rutgerson guilty if they believed "that the evidence establishes beyond a reasonable doubt that Mr. Rutgerson did persuade, induce, entice, or coerce Detective Montgomery to engage in unlawful sexual activity, and that he believed she was under 18 years old."  Likewise, the instruction directed jurors to find Rutgerson not guilty if they concluded that Amberly "presented as [a] 15-year old who was ready and willing to engage in sexual activity with Mr. Rutgerson, but that Mr. Rutgerson did not persuade, induce, entice, or coerce" her to do so.  One flaw in these instructions is that they failed to convey to the jury that Rutgerson was charged with an attempted violation of § 2422(b).  The proposed instructions appear to suggest that Rutgerson must have actually been successful in persuading Amerbly to have sex with him before he could be found guilty.  Contrary to the language in the proposed instruction, Rutgerson still could have been found guilty for attempting to violate § 2422(b)

27

had he tried unsuccessfully to entice Amberly into engaging in sex.  Because the proposed instruction does not admit of this possibility, it was not substantively correct.  Moreover, whether Amberly was "ready and willing" to engage in sexual activity with Rutgerson misses the essential statutory requirement -- whether Rutgerson attempted to <u>induce</u> Amberly by offering her a substantial sum of money to do so.  The district court did not abuse its considerable discretion in declining to deliver the proposed instruction to the jury.

In any event, Rutgerson's ability to present an effective defense was not impaired by the court's failure to give the proffered instruction for two other reasons.  First, the instruction given by the trial court accurately conveyed the substantive law and the core of his defense theory.  Moreover, Rutgerson's counsel was permitted to argue his theory of defense extensively in closing argument.  Thus, for example, counsel argued:

> This case is not about whether Mr. Rutgerson was going to go hire the services of a prostitute. Of course, of course he was going up there to have sex with a prostitute. He had condoms in his pocket, he had money to pay.
>
> . . . .
>
> You are to determine from the evidence in this case whether the Defendant is guilty or not guilty of that specific crime. Not was he going to engage in prostitution; absolutely not, that's not what you are here to determine.  You are here to determine who Mr. Rutgerson believed, who the Government has proved,

28

beyond a reasonable doubt, and whether they have done that, he believed he was going to see, and <u>whether he induced, coerced, enticed or persuaded that person to do it</u>.

Rutgerson also robustly argued that the evidence established that Detective Montgomery was posing "as a prostitute, who is ready, willing and able to engage in sex." But, he said, there was "no evidence -- nobody came up on the stand and told you . . . this is where Mr. Rutgerson was really trying to persuade and entice and coerce this person into performing sexual acts, because they can't." His defense was not impaired because the district court declined to present his proposed instruction.

## IV.

Finally, Rutgerson claims that the district court abused its discretion by refusing to let Detective Mauro testify that, after extensive investigation, he had not found any indication that Rutgerson had ever visited any websites dedicated to sex with minors. He argues that this evidence would have been significant to show that Rutgerson lacked knowledge that various traits in Amberly's initial ad indicated she was underage and also undermined the argument that he was predisposed to commit the crime. Although we think that the district court erred in excluding this evidence, the error was harmless and does not entitle Rutgerson to relief from his conviction.

29

We review a district court's evidentiary rulings for abuse of discretion. United States v. Miles, 290 F.3d 1341, 1351 (11th Cir. 2002). "[E]videntiary and other nonconstitutional errors do not constitute grounds for reversal unless there is a reasonable likelihood that they affected the defendant's substantial rights; where an error had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict, reversal is not warranted." United States v. Arbolaez, 450 F.3d 1283, 1290 (11th Cir. 2006) (quoting United States v. Hawkins, 905 F.2d 1489, 1493 (11th Cir. 1990)).

The general rule precluding introduction of character evidence to show a person's predisposition to commit (or not commit) a crime is clear. Fed. R. Evid. 404(a)(1) expressly provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." As such, the government generally cannot introduce evidence attempting to show that a defendant was predisposed to commit a crime, see United States v. Brannan, 562 F.3d 1300, 1308 (11th Cir. 2009), nor can a defendant present evidence of generally good conduct in an attempt to negate the government's showing of criminal intent, United States v. Ellisor, 522 F.3d 1255, 1270-71 (11th Cir. 2008). But, "[w]hen a person's character or character trait is an essential element of a charge, claim, or defense, the character or trait may . . . be proved by relevant specific instances of the person's conduct." See

30

Fed. R. Evid. 405(b).  Thus, for instance, when a defendant raises an entrapment defense, the government is permitted to introduce specific instances of conduct designed to show that the defendant was predisposed to commit the crime of which he was accused.  Brannan, 562 F.3d at 1308.

We are presented in this case with a slightly different question: whether a defendant who has raised an entrapment defense may present evidence of specific conduct to show a lack of predisposition to commit the charged crime.  We believe that the best answer to this question would be to allow a defendant claiming entrapment to present evidence which meaningfully bears upon his lack of predisposition to commit the crime with which he is charged.  Although we have not previously had the opportunity to decide this issue, the Ninth Circuit's decision in United States v. Thomas, 134 F.3d 975 (9th Cir. 1998), offers some guidance. There, the defendant sought to present evidence that he had no prior arrests or criminal record of any kind to show that he was not predisposed to engage in a large-scale drug trafficking scheme and had fallen victim to government entrapment. Id. at 979.  The Ninth Circuit noted that a defendant's character is an essential element of an entrapment defense because the government must prove that he was predisposed to commit the crime.  Id. at 980.  Where the defendant's predisposition to commit the crime is at issue, the lack of previous related bad acts by the defendant is relevant.  Id. at 979.  Moreover, the Ninth Circuit determined that it was important

31

to allow the defendant a fair opportunity to present evidence to counter the effect of the government's presentation suggesting that he had a predisposition to commit the crime. Id. at 980.

Similarly, in this case, Rutgerson sought to present evidence that the police had not found any evidence that he had visited sites dedicated to sex with minors in order to show that he was not predisposed to seeking out minors to have sex with him. This was intended to help rebut any testimony showing that he was predisposed toward attempting to induce an underage prostitute to have sex with him. Most notable among that evidence, perhaps, was evidence that he had searched for and viewed the ads of multiple "young" prostitutes online and had contacted those prostitutes. Since Rutgerson's predisposition to commit the charged crime was an essential element at issue after he raised a claim of entrapment, the district court should have allowed him to present evidence tending to rebut the government's evidential foundation that he was predisposed to violate § 2422(b). To that end, highlighting the lack of evidence that Rutgerson had visited any websites dedicated to sex with minors would have been relevant.

But the mere citation of error does not entitle Rutgerson to relief because the error plainly was harmless. We are satisfied after carefully reviewing this record that the error did not have a substantial effect on the outcome of the case, and more than sufficient evidence supported the jury's verdict. See Arbolaez, 450 F.3d at

32

1290.  First, and most important, essentially the same body of evidence that Rutgerson sought to adduce through Detective Mauro was elicited from another witness.  Detective Johns testified that he searched the internet history on Rutgerson's phone.  On cross-examination, Johns admitted that, in filling out a warrant to search Rutgerson's phone, he had sworn that if Rutgerson were a child predator, he would possess child pornography on his phone.  However, he stated that the forensic search of Rutgerson's phone revealed no child pornography or access to the kinds of internet sites where people discussed gathering, collecting, and obtaining child pornography.  Rutgerson emphasized this testimony during closing arguments, observing for the jury that there was no evidence that he had ever visited a child pornography website or attempted to have sex with an underage person.  Moreover, Detective Mauro testified that he was not suggesting that Rutgerson had any knowledge that an age listing of 99; the erratic use of capital and lowercase letters; or, finally, the use of the phrase "sweet, young, and petite" in Amberly's ad would signify that she was underage.[3]  Finally, Rutgerson was

---

[3] The examination went this way:

> Q:     Just so we are all clear about your testimony, you told this jury that this, the 99, the capitals and lowercases, the use of sweet, young, petite, based on your training and experience, was to signify a minor.  Do you recall that testimony?
>
> A:     Yes, sir.

permitted to present the testimony of private investigator Valerie Rivera and, through her, enter into evidence images of the websites that the police had uncovered in his iPhone history. Those images further bolstered Rutgerson's claim that he never accessed child pornography.

Moreover, whatever benefit Rutgerson may have received from Detective Mauro's testimony would have been overwhelmed by the evidential foundation that Rutgerson was predisposed to commit the crime. In addition to evidence establishing his many searches for "young" prostitutes, Rutgerson expressed no hesitation whatsoever upon learning that Amberly was underage. His only concern on that front appeared to be that they be discreet. Far from hesitating after learning Amberly's tender age, Rutgerson actively pursued a sexual encounter with her across several days, and exhaustively negotiated the price, terms, and conditions for various sexual activities. The evidence that he was disallowed from eliciting from Detective Mauro would not have overcome the powerful evidence that he was, in fact, predisposed to commit the crime with which he was charged. The district court's error in prohibiting the evidence was harmless.

**AFFIRMED.**

---

Q:    You are not suggesting that Mr. Rutgerson had any knowledge that it would have signified a minor to him, are you?

A:    No.