[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-15073
Non-Argument Calendar

_____

D.C. Docket No. 1:14-cr-00397-RWS-JSA-3

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DOUGLAS BERNARD DUKES,
JOSE ANTONIO DELACRUZ,

Defendant – Appellants.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(June 4, 2018)

Before WILSON, JORDAN, and FAY, Circuit Judges.

PER CURIAM:

On January 26, 2014, half-brothers Douglas Dukes and Jose Delacruz, along with another man, drove a stolen Honda Accord through the front doors of The AR Bunker, a gun store in Newnan, Georgia. Once inside, the men stole 29 guns, loaded them into the Accord, and drove away. After abandoning the Accord nearby, the three men transferred several of the weapons into another awaiting stolen car and fled. The police located the abandoned Accord shortly after the burglary and found a few of the stolen firearms as well as Mr. Dukes' cell phone, which he had left behind. On that cell phone were four "selfies" which police distributed and were able to identify as being photos of Mr. Dukes. The phone number of that cell phone also matched the number that one witness, a high school counselor, knew belonged to Mr. Dukes. As law enforcement closed in, Mr. Dukes, Mr. Delacruz, and Robert Coates sold the stolen firearms to a buyer named "D." The trio was assisted by Mr. Delacruz's girlfriend, Tanisha Rhodes, and Mr. Coates' girlfriend, April Fisher.

The group was eventually arrested and charged with several crimes resulting from the burglary of The AR Bunker. Mr. Coates, Ms. Fisher, and Ms. Rhodes pled guilty. Mr. Dukes and Mr. Delacruz proceeded to trial on three counts: (1) conspiracy to steal and possess firearms from a federal firearms licensee, 18 U.S.C. § 371; (2) stealing firearms from a federal firearms licensee, 18 U.S.C. §§ 922(u), 924(i)(1) & (2); and (3) possession of stolen firearms, 18 U.S.C. §§ 922(j),

2

924(a)(2).  After a three-day trial, in which the government presented testimony from co-conspirators Mr. Coates and Ms. Rhodes, a jury found Mr. Dukes and Mr. Delacruz guilty on all counts.  Each was sentenced to a total term of 135 months' imprisonment.

On appeal, Mr. Dukes challenges his conviction, arguing that the introduction of these "selfies," obtained from his cell phone, was unduly prejudicial.  Mr. Delacruz challenges his sentence, arguing that the district court plainly erred by considering the need for rehabilitation as a sentencing factor.  *See Tapia v. United States*, 564 U.S. 319, 321 (2011).  We address each issue in turn and, for the reasons that follow, affirm in all respects.

**I**

Mr. Dukes argues that the district court abused its discretion in admitting three "selfies," which portrayed Mr. Dukes displaying firearms in a "provocative" manner and striking "gangster like poses."  As he did before the district court, Mr. Dukes contends that these photos (although relevant) were unfairly prejudicial and constituted improper character evidence under Federal Rules of Evidence 403 and 404(a).  We review the district court's evidentiary rulings for abuse of discretion, *United States v. Blake*, 868 F.3d 960, 975 (11th Cir. 2017), and have cautioned that Rule 403 "is an extraordinary remedy which the district court should invoke

3

sparingly, and the balance should be struck in favor of admissibility," *United States v. Alfaro-Moncada*, 607 F.3d 720, 734 (11th Cir. 2010).

We need not reach the evidentiary issue here because, even if we determined that the photos should have been excluded, "[e]videntiary and other nonconstitutional errors do not constitute grounds for reversal unless there is a reasonable likelihood that they affected the defendant's substantial rights; where the error had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict, reversal is not warranted." *United States v. Rutgerson*, 822 F.3d 1223, 1239 (11th Cir. 2016). *See also United States v. Phaknikone*, 605 F.3d 1099, 1109 (11th Cir. 2010) ("Reversal is warranted only if the error resulted in actual prejudice because it had substantial and injurious effect or influence in determining the jury's verdict.") (alterations adopted, quotation marks omitted). The burden of making such a showing is on the government. *See Phaknikone*, 605 F.3d at 1109. In addressing whether an error is harmless, we are required to consider the entire trial record. *See United States v. Guzman*, 167 F.3d 1350, 1353 (11th Cir. 1999).

Our review of the trial record indicates that the government met its burden to prove that error, if any, was harmless. At trial, the government introduced overwhelming evidence establishing Mr. Dukes' guilt. *See id*. ("Overwhelming evidence of guilt is one factor that may be considered in finding harmless error.");

4

*Phaknikone*, 605 F.3d at 1109.   First and foremost, two of Mr. Dukes' co-conspirators, Mr. Coates and Ms. Rhodes, testified against him.   Mr. Coates, who joined Mr. Dukes at The AR Bunker for the burglary, identified him on the security camera video and explained the actions each took during and after the crime.   Ms. Rhodes explained that after the burglary, Mr. Dukes returned to his home and asked her to drive the men to Ms. Fisher's house.   Once there, she testified that they unloaded the firearms from the trunk of her car and later loaded the weapons back up and went to a hotel.   At the hotel, Ms. Rhodes asked the men where the guns came from.   Mr. Dukes and Mr. Delacruz replied by showing her a recording of the surveillance video from The AR Bunker which was on the internet.   Like Mr. Coates, Ms. Rhodes also recounted how Mr. Dukes helped sell weapons to "D" after the burglary.   We have relied on similar co-conspirator testimony in determining that any error in the introduction of other evidence was harmless.   *See United States v. Barner*, 572 F.3d 1239, 1246–47 (11th Cir. 2009) (error was harmless where the trial evidence included testimony from three of the defendant's accomplices); *Guzman*, 167 F.3d at 1353 (error was harmless where the trial evidence included testimony from one co-conspirator detailing the defendant's involvement).

In addition to the co-conspirator testimony, the government was able to connect Mr. Dukes to his abandoned cell phone—and, therefore, the Accord—

5

through its assigned cell phone number, which matched the number provided by his high school counselor. And, on that cell phone, Mr. Dukes took a screenshot of a map to The AR Bunker before the burglary. This evidence, coupled with the testimony of two of his co-conspirators, provided more than sufficient independent evidence of Mr. Dukes' guilt. *See United States v. Sosa*, 777 F.3d 1279, 1294 (11th Cir. 2015) ("When the record contains sufficient independent evidence of guilt, any error is harmless."); *United States v. McGarity*, 669 F.3d 1218, 1241–42 (11th Cir. 2012) (detailing physical evidence which, in addition to co-defendant's statements to police, constituted "voluminous evidence of guilt" rendering any error harmless).

Mr. Dukes contends that he was harmed because the photos were "racially charged." Of course, "[t]here is no place in a criminal prosecution for gratuitous references to race . . . [and] [e]lementary concepts of equal protection and due process alike forbid a prosecutor to seek to procure a verdict on the basis of racial animosity." *United States v. Bowman*, 302 F.3d 1228, 1240 (11th Cir. 2002) (quoting *Smith v. Farley*, 59 F.3d 659, 663 (7th Cir. 1995)). We have required the government to "scrupulously avoid[ ] the possibility that the jury's verdict might be clouded by racial issues." *Id*. The government did that here. Mr. Dukes does not point to—and our review has not found—any instances where the government suggested that Mr. Dukes was a gang member, made "gratuitous references to

6

race," or otherwise injected improper stereotypes into the case.  In fact, the government used the photos only for identification and did not discuss how Mr. Dukes was posed in the photos at all.  We therefore reject his argument that the introduction of the photos was in and of itself prejudicial.

Given the mountain of evidence against Mr. Dukes, any error in introducing the three photographs was harmless.  *See Sosa*, 777 F.3d at 1294.

## II

Mr. Delacruz argues that his sentence is procedurally unreasonable under *Tapia*, which held that "[18 U.S.C. §] 3582(a) precludes sentencing courts from imposing or lengthening a prison term to promote an offender's rehabilitation." 564 U.S. at 332.   Mr. Delacruz did not raise this issue at sentencing, and agrees that we review only for plain error.  We may correct a plain error only when (1) an error has occurred, (2) the error was plain, (3) the error affected substantial rights, and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings.  *See United States v. Gonzalez*, 834 F.3d 1206, 1218 (11th Cir. 2016).

The government argues that the district court did not violate *Tapia* or our decision in *United States v. Vandergrift*, 754 F.3d 1303 (11th Cir. 2014), because it "did not sentence Delacruz to prison in the first place or choose a 135-month sentence specifically so he could complete the Bureau of Prisons [ ] drug treatment

7

program." Appellee's Brief at 24. We rejected a similar argument in *Vandergrift*, holding that "a district court errs when it *considers* rehabilitation when imposing or lengthening a sentence of imprisonment." 754 F.3d at 1310 (emphasis original).

We agree with Mr. Delacruz that the district court erred because it stated that it was "*required* to take into account" rehabilitation opportunities when it discussed the § 3553(a) factors and how it arrived at a 135-month sentence. *See* D.E. 169 at 11. In our view, this indicates that the district court impermissibly considered rehabilitation as a factor. *See Vandergrift*, 754 F.3d at 1310 ("[W]e find that there was *Tapia* error because the district court considered an improper § 3553(a) factor when it sentenced Vandergrift: rehabilitation."). And, at the time of the sentencing hearing, this *Tapia* error was plain. *See United States v. Alberts*, 859 F.3d 979, 986 (11th Cir. 2017) ("[B]ecause our binding precedent clearly precludes consideration of rehabilitation when crafting a prison sentence . . . that error was plain.") (citing *Vandergrift*, 754 F.3d at 1310).

Despite this error, Mr. Delacruz has failed to show that the error affected his substantial rights. *See United States v. Olano*, 507 U.S. 725, 734 (1993) (holding that for an error to "affect substantial rights . . . in most cases [ ] means that the error . . . must have affected the outcome of the district court proceedings"); *Vandergrift*, 754 F.3d at 1312. The burden is on Mr. Delacruz to establish "a reasonable probability that, but for the error, [his sentence] would have been

8

different," *United States v. Henderson*, 409 F.3d 1293, 1308 (11th Cir. 2005) (quotation marks omitted), and he has not met it.

Our review indicates that Mr. Delacruz's "rehabilitation needs clearly constituted only a minor fragment of the court's reasoning." *Vandergrift*, 754 F.3d at 1312 (quoting *United States v. Bennett*, 698 F.3d 194, 201 (4th Cir. 2012)).  The district court considered several permissible § 3553(a) factors—the seriousness of the offense, Mr. Delacruz's characteristics, promoting respect for the law (by not wanting to contribute to "the perception that crimes are cheaper by the dozen"), deterrence, and avoiding unwarranted sentence disparities.  *See Alberts*, 859 F.3d at 986 (describing consideration of rehabilitation as "merely an ancillary concern" and noting other § 3553(a) factors that were of primary importance).

Of particular significance, the district court selected a sentence for Mr. Delacruz at the bottom of the advisory guideline range (135 months) which was identical to that of his co-defendant Mr. Dukes, who committed the same crimes. The fact that both men received the same sentence, even though Mr. Delacruz had a higher advisory guideline range indicates to us that the need to avoid unwarranted sentence disparities was of primary concern.  As the district court stated, it "sentence[s] people on the same day that were involved in the crime, so that their sentences will be fair as they relate to one another."  D.E. 169 at 12.  Mr. Delacruz contends that his sentence would have been lower without consideration

9

of rehabilitation, but such a lesser sentence would have been below the advisory guideline range. Nothing in the record suggests that the district court would have varied downward in Mr. Delacruz's case and sentenced him to a lesser sentence than Mr. Dukes, especially when Mr. Dukes was sentenced at the top end of his advisory guideline range.

Mr. Delacruz has failed to show that his sentence would have been different had the district court not considered rehabilitation, so he has not shown any effect on his substantial rights. *See Vandergrift*, 754 F.3d at 1312 (no effect on a defendant's substantial rights where "[t]he court's primary considerations were for the safety of the public and deterring others from similar conduct"). We affirm his sentence as procedurally reasonable.

### III

For the foregoing reasons, we affirm Mr. Dukes' conviction and Mr. Delacruz's sentence.

**AFFIRMED**.