[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13692
Non-Argument Calendar
_____

D.C. Docket No. 6:16-cr-00262-JA-TBS-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

VIKTORIYA JOHNSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 28, 2019)

Before WILLIAM PRYOR, MARTIN and BRANCH, Circuit Judges.

PER CURIAM:

Viktoriya Johnson appeals her convictions for conspiracy to commit wire fraud, 18 U.S.C. § 1349, and for wire fraud, *id.* § 1343. Johnson's convictions arose from her role in a conspiracy to defraud real estate investors by conning them into paying for income-producing real estate and misappropriating their money through a Ponzi scheme. Johnson challenges the denial of her motion for a judgment of acquittal, in which she argued that she lacked actual knowledge of the scheme to defraud. Johnson also argues, for the first time, that she was entitled to an acquittal because the government failed to prove its alternative theory that she acted with deliberate ignorance. We affirm.

We apply two standards of review in this appeal. We review the denial of a motion for a judgment of acquittal *de novo* and draw all inferences from the evidence in favor of the government. *United States v. Rutgerson*, 822 F.3d 1223, 1231 (11th Cir. 2016). "We are required to affirm [a] conviction if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted).

Knowledge is an element of conspiracy and of wire fraud. A defendant is guilty of conspiracy if she joined the conspiracy voluntarily with general knowledge of its objective. *United States v. Moran*, 778 F.3d 942, 960 (11th Cir. 2015). Circumstantial evidence suffices to prove knowledge when the defendant's "presence at the scene of conspiratorial activity [makes it] so obvious that

2

knowledge of its character can fairly be attributed to [her]." *Id.* at 960–61. A defendant commits wire fraud if she knowingly participates in a scheme to defraud and uses or causes the use of the interstate wires in furtherance of the scheme. *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009). A defendant acts knowingly whether she "act[s] only with positive knowledge . . . [or she] act[s] with an awareness of the high probability of the existence of the fact in question." *United States v. Rivera*, 944 F.2d 1563, 1570 (11th Cir. 1991). Knowledge can be proved with evidence of actual knowledge or of deliberate ignorance. *United States v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000).

When a defendant testifies in her defense, the jury may disbelieve her testimony and consider it as substantive evidence of her guilt. *United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995). By choosing to testify, the defendant "runs the risk that if disbelieved the jury might conclude the opposite of [her] testimony is true." *Id.* (internal quotation marks and citation omitted). "At least where some corroborative evidence of guilt exists for the charged offense . . . and the defendant takes the stand in [her] own defense, [her] testimony, denying guilt, may establish, by itself, elements of the offense." *Id.* at 314–15. That "rule applies with special force where . . . [the government must prove] the defendant's intent or knowledge . . . ." *Id.* at 315.

Ample evidence proved that Johnson had actual knowledge of the scheme to defraud real estate investors, so we need not address the alternative theory of deliberate ignorance. Testimony from Johnson's secretaries, her victims, and federal investigators and copies of bank statements, emails, checks, and bogus real estate documents proved that Johnson knew that the company she formed and managed, Golden Investment Realty, Inc., operated a Ponzi scheme in which she and her boyfriend, Leone Alfano La Cava, misappropriated millions of dollars wired to them by 83 real estate investors and paid them a pittance in rental income.

After Alfano conned investors in Italy, Johnson executed their scheme to defraud in Florida. She served as president of Golden Investment, managed its daily operations, opened and served as the sole signatory on its bank accounts, performed its bookkeeping, and supervised and paid office staff. *See United States v. Odoni*, 782 F.3d 1226, 1232 (11th Cir. 2015) ("A jury could infer Odoni knew the fraudulent nature of the operation because he was a central part of it . . ."); *Moran*, 778 F.3d at 961–62. As president of Golden Investment, Johnson signed contracts and quickclaim deeds for residential and commercial properties that were either fictitious or were owned by other persons. *See United States v. Gaines*, 690 F.2d 849, 853–54 (11th Cir. 1982) (concluding a jury may infer knowledge from the defendant's signature on paperwork).

4

Johnson misappropriated more than $1.3 million of investors' money. She accepted payments wired directly to her personal bank account and transferred money from company accounts to her personal accounts. She wrote checks on company accounts for cash, which her secretaries used to purchase cashier's checks, and she wrote large checks on which she referenced her spa, even after it closed. Johnson also made checks payable to her secretaries and instructed them to cash the checks and to send the money to her and to her relatives using Western Union wire transfers. Shortly after receiving large payments, Johnson purchased a spa for $250,000, her home, three rental properties, and $927,000 in luxury items, including expensive automobiles.

Johnson also incriminated herself. When confronted by one investor bearing a receipt for a wire transfer to her bank account, Johnson became "very nervous," dodged into her office, and then fled from the building. *See United States v. Blakey*, 960 F.2d 996, 1000–01 (11th Cir. 1992) (recognizing flight suggested a conspirator's consciousness of guilt). Later, after a federal agent told Johnson that all her properties were acquired with stolen money, she responded, "not everything." When questioned by the agent, Johnson falsely denied serving as the president of Golden Investment. And Johnson's implausible testimony at trial "added further weight to the prosecution's case." *See United States v. Margarita Garcia*, 906 F.3d 1255, 1274 (11th Cir. 2018), *cert. denied sub nom. Garcia v.*

*United States*, 139 S. Ct. 2027 (2019). Although Johnson testified that she was a "glorified secretary" for her coconspirator and was unaware of the scheme to defraud, the jury discredited her testimony. *See Brown*, 53 F.3d at 314–15; *see Margarita Garcia,* 906 F.3d at 1274 ("An explanation or denial offered by a defendant at trial that the jury finds implausible or false may 'form a sufficient basis to allow the jury to find that the defendant had the requisite guilty knowledge.'").

We **AFFIRM** Johnson's convictions.