[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 04 2003
THOMAS K. KAHN
CLERK

_____

No. 01-15156

_____

D. C. Docket No. 00-00075-CR-8-T-30-TGW

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

        versus

AUDLEY EVANS,
C. HAYWARD CHAPMAN,

                                        Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(September 4, 2003)

Before EDMONDSON, Chief Judge, DUBINA, Circuit Judge, and HODGES[*],
District Judge.

_____

[*] Honorable Wm. Terrell Hodges, United States District Judge for the Middle District of Florida,
sitting by designation.

EDMONDSON, Chief Judge:

Audley Evans and C. Hayward Chapman were charged with 125 counts of wire fraud, conspiracy, bribery, gratuity, money laundering, and making false statements. Following a jury trial, Evans was convicted of one count of conspiracy (count 8), two counts of bribery (counts 14 and 15), six counts of gratuity (counts 34, 35, and 45-48), and six counts of false statements (counts 120-125). Chapman was convicted of four counts of gratuity (counts 69-72). The district court granted Evans's post-trial motion for judgment of acquittal on count 125. On appeal, appellants challenge their convictions and sentence. We vacate Chapman's convictions, Evans's gratuity convictions on counts 45-48 and Evans's false statement convictions on counts 120 and 121.[1] Discovering no other reversible error, we affirm without discussing the remainder of Evans's convictions.[2]

---

[1] We vacate Evans's convictions on counts 120 and 121 based on the Government's concession -- which we accept -- that insufficient evidence exists to support these convictions. We do not discuss them further.

[2] Briefly stated, Evans challenged his conspiracy conviction (count 8) claiming that some of the allegations and overt acts in the count were supported by insufficient evidence and that the objects of the conspiracy included bribery and gratuity, possibly violating Wharton's Rule. Evans challenged his bribery and gratuity convictions (counts 14, 15, 34, and 35) claiming there was insufficient evidence (1) of a quid pro quo, (2) of an official act linked to the bribe, and (3) that Bill Williams was the giver of the bribe as charged in the indictment. Evans challenged his false statement convictions (counts 122-124) claiming the Government offered insufficient evidence to show that he made, directed, or aided and abetted false statements or that any false statement was material.

BACKGROUND[3]

From 1988 through August 1996, Audley Evans was the Executive Director of the Tampa Housing Authority (The Authority). After resigning as Executive Director, Evans was an unpaid consultant at the Authority until December 1996. While an unpaid consultant for the Authority, Evans became the Executive Director of the Meridian River Development Corp. (MRDC).

The City of Tampa created the Authority to develop and operate public housing units for eligible families. The Authority received millions of dollars annually from the United States Department of Housing and Urban Development (HUD) to assist it in providing housing. Among the HUD funds received by the Authority were "Section 8" funds which were used by the Authority to pay the rent of qualified families who lived outside of Authority-owned public housing. The Authority made rent payments for low income families who became clients of the Authority and resided in private housing.

MRDC is a non-profit corporation created at the direction of the Authority to provide and develop affordable housing opportunities for low income persons. MRDC was created as an instrumentality of the Authority for the purpose of

_____

[3] We limit our discussion of the facts to those relevant to gratuity counts 45-48 and 69-72.

3

implementing the housing plans and programs of the Authority. As a private non-profit corporation, MRDC could perform public housing functions that the Authority, as a state agency, could not. The Authority was the sole member of MRDC.

MRDC owned and operated several residential properties. MRDC received Section 8 funds from the Authority for eligible families who resided in MRDC properties. In 1996 and 1997, MRDC received more than $350,000.00 in HUD funds. All of these funds were paid by the Authority to MRDC to offset the rent payments of eligible low income residents in MRDC properties. MRDC's excess funds were to be returned to the Authority, or used as the Authority directed.

In July 1996, Evans resigned his Director's position at the Authority. Immediately thereafter, Evans became the director of MRDC. Beginning in September 1996, Evans awarded several MRDC contracts to Concorde, Inc. Concorde was formed by C. Hayward Chapman and Terri Keirn (Chapman's daughter). Concorde was controlled by Chapman. In December 1996, Chapman had Concorde post a $25,000 letter of credit as collateral to allow Evans to take out a loan. In May 1997, Chapman had Concorde pay $125,000.00 to three of Evans's creditors. Although Evans claims that Chapman paid these sums to purchase an interest in Caribbean Properties (a company owned by Evans), Evans,

4

after the time of Chapman's payments, executed a financial affidavit stating that he and his wife owned 100% of Caribbean Properties.

A grand jury indicted Evans, Chapman, and Patrick Watson on 125 counts of wire fraud, conspiracy, bribery, unlawful gratuities, money laundering, and false statements. The case proceeded to trial. At the close of the Government's case, defendants moved for a judgment of acquittal. The district court granted Watson's motion in its entirety, granted Evans's motion on 27 counts and granted Chapman's motion on one count. The district court reserved ruling on the remainder of the counts.

The defense presented evidence; Evans and Chapman testified. The case was then submitted to the jury. The jury found Evans guilty on 15 counts: conspiracy to defraud the United States (count 8), bribery (counts 14 and 15), receipt of an illegal gratuity (counts 34, 35, and 45-48), and making false statements (counts 120-125). Chapman was found guilty of four counts of paying an illegal gratuity (counts 69-72). The district court later granted Evans a judgment of acquittal on count 125 but denied the motions for a judgment of acquittal on the remaining counts.

Evans was sentenced to 41 months on counts 8, 14, 15, and 120-124. He was sentenced to 24 months on counts 34, 35, and 45-48. The sentences were to

run concurrently. He was ordered to pay a $900.00 assessment and restitution of $209,249.38. Chapman was sentenced to 18 months and ordered to pay a $350.00 assessment and a $5,000.00 fine.

## DISCUSSION

We review the denial of a motion for judgment of acquittal de novo. United States v. Grigsby, 111 F.3d 806, 833 (11th Cir. 1997). We conduct an independent review of the sufficiency of the evidence giving no deference to the district court's decision. Id. We view all the evidence in the light most favorable to the Government and draw[] all reasonable inferences and credibility choices in favor of the jury's verdict. Keeping this standard in mind we turn to appellant's arguments.

Counts 45-48 and 69-72 charged that Chapman, through Concorde, had given and Evans had received gratuities because of official acts to be performed by Evans. Evans and Chapman challenge the convictions claiming Evans was no public official, no link existed between the gratuities and an official act, and nothing evidenced the intent to give or accept an unlawful gratuity. Because Evans was not a public official (at MRDC), we vacate these convictions.

6

18 U.S.C. § 201(c)(1) makes it illegal for anyone to give, offer, or promise anything of value to a public official in return for any official act performed or to be performed by that official. The statute also makes it illegal for a public official to receive anything of value in return for an official act. According to the statute's words, a "public official" is a

> Member of Congress, Delegate, or Resident Commissioner, either before or after such official has qualified, or an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia, in any official function, under or by authority of any such department, agency, or branch of Government, or a juror; . . . .

18 U.S.C. § 201(a)(1). "To determine whether any particular individual [is a public official], the proper inquiry is . . . whether the person occupies a position of public trust with official federal responsibilities." Dixson v. United States, 104 S.Ct. 1172, 1180 (1984).

"To be a public official under section 201(a), an individual must possess some degree of official responsibility for carrying out a federal program or policy." Id. at 1181. The person need not be an employee of the federal government: the definition of "public official" is broad enough to cover persons working for private organizations. See United States v. Kenney, 185 F.3d 1217, 1222 (11th Cir. 1999) (saying that employee of government contractor who

provided information and made recommendations that were relied on by government's decision makers was public official). But the Supreme Court has cautioned that the "mere presence of some federal assistance" is not enough to "bring[] a local organization and its employees within the jurisdiction of the federal bribery statute . . . ." Dixson, 104 S.Ct. at 1181.

The Government claims that Evans was a public official because he was a "person acting for or on behalf of the United States." They point out that MRDC was closely related to the Authority. MRDC was the only nonprofit entity associated with the Authority. The Authority set MRDC up for the Authority's benefit. MRDC's excess funds were to be returned to the Authority or spent as the Authority directed. Two Authority board members sat on the board of MRDC. MRDC received a substantial amount of HUD Section 8 funds from the Authority for Authority clients residing in MRDC properties. The Government argues that these facts show that Evans was "acting on behalf of a federal agency, by the authority of a federal agency, and was responsible for carrying out a federal program or policy."

The only federal program identified by the Government is the "Section 8" program. Under that program, HUD makes annual contribution contracts with local public housing agencies, in this case the Authority, which the agencies can

8

use to make rental payments to the owners of dwelling units. 42 U.S.C. 1437f(b)(1). The record shows that MRDC participated in this program as the owner of dwelling units. In this way, MRDC is no different from any other landlord renting to eligible low income tenants. MRDC was a final recipient of federal funds.

The final recipients of federal funds are usually not public officials under section 201(a)(1). Dixson, 104 S.Ct. at 1182 ("[B]lock grant recipients and business people who provide recipients with goods and services cannot be said to be public officials under section 201(a) unless they assume some duties of an official nature."). The Government argues that MRDC differs from other landlords because of its relationship with the Authority and that this relationship makes Evans a public official. In the light of the record in this case, we disagree.

The relationship between MRDC and the Authority cannot by itself make an MRDC employee a public official. In fact, not every employee of the Authority is a public official. Dixson, 104 S.Ct. at 1181 ("[W]e do not mean to suggest . . . that all employees of local organizations responsible for administering federal grant programs are public officials within the meaning of section 201(a)."). "To be a public official . . . an individual must possess some degree of official responsibility for carrying out a federal program or policy." Id. The evidence

9

does not show and the Government does not really argue that Evans possessed this kind of official responsibility. Because Evans while at MRDC[4] did not have authority for carrying out a federal program or policy, he was not a public official as defined by section 201(a)(1).[5] Evans's convictions on Counts 45-48 and Chapman's convictions on counts 69-72 are vacated.[6]

CONCLUSION

---

[4] The gratuity payments at issue occurred while Evans was the director of MRDC. The first payment may have occurred while Evans was still an unpaid consultant for the Authority, but the record is not clear on this point. The record indicates that the first gratuity, the letter of credit, was given on 23 Dec. 1996 when Evans was an unpaid consultant and that Evans was an unpaid consultant "until" December 1996. Although the indictment alleges that Evans remained an unpaid consultant until 30 Dec. 1996, the evidence in the record does not indicate the date that Evans quit consulting for the Authority. Assuming Evans was an unpaid consultant for the Authority on 23 Dec. 1996, his position did not make him a public official. The Government does not argue that Evans's position as an unpaid consultant made him a public official for this gratuity and no evidence in the record indicates that Evans (as a consultant) exercised authority for carrying out a federal program. The record evidences nothing about Evans's duties -- if any -- as an unpaid consultant to the Authority.

[5] We do not say that the director of an organization like MRDC can never be a public official. If evidence showed Evans influenced the Authority's decisions involving the Federal Low Income Housing program, he could be a public official. See United States v. Hang, 75 F.3d 1275, 1280-81 (8th Cir. 1996)(Eligibility technician for the Minneapolis Public Housing Authority was public official because he "had primary authority for determining who would be the beneficiaries of federal funds."); Kenney, 185 F.3d at 1222.

[6] Because we vacate Chapman's convictions, we do not consider whether the district court should have granted Chapman's motion to sever his trial and Chapman's motion for a mistrial.

Because Evans was not a public official while at MRDC we VACATE his convictions on counts 45-48 and Chapman's convictions on counts 69-72. We also VACATE Evans's conviction on counts 120 and 121. We AFFIRM the remainder of Evans's convictions and REMAND with instructions to enter a judgment of acquittal for Chapman and to re-sentence Evans.

AFFIRMED IN PART, VACATED IN PART, and REMANDED.